L. J. Cook v. State.

No. 24018. May 5, 1948.
Rehearing Denied June 25, 1948.

236

Hon. Arthur Tipps, Judge Presiding.

*Davenport and Anderson,* of Wichita Falls, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction for aggravated assault with a penalty of $50.00 fine and six months in the county jail.

An indictment was returned by the grand jury alleging that the appellant made an aggravated assault and battery and did "* * * inflict serious bodily injury upon the said William J. Nixon by then and there striking the said William J. Nixon with a bottle." The offense is alleged to have been committed on the 11th day of March, 1947.

The injured party was married to the sister of appellant in the year 1924. For many years he had been a persistent drinker, and frequently would leave his wife and six children in necessitous circumstances. Appellant had, through the years, given assistance to his sister and the children. Incident to this he and Nixon had several conflicts, the last of which was some two years prior to the time of the one involved in this appeal. At that time Nixon had been away and he came by the home of his family in a drunken condition. He was soon in a disturbance with his older son, or sons. Appellant was present and took part. As Nixon left, cursing, he threatened to kill appellant. There is no evidence of any threats of a lesser attack at that time. After this Nixon left the state and went to California, where he stayed for two years. His wife finally secured a divorce and filed charges against him for failure to support his children. He was brought home and placed in jail. About two days prior to the assault herein charged, he secured his release from jail with an agreement to work for a party in Wichita Falls who would pay 30% of his wages to his former wife for the support of the children. Incident to this agreement he was to be permitted to see his children.

He had made the second visit to them and was with two of the children in the front room, near the door, discussing their arithmetic problems, when appellant approached. He saw Nixon in the room and picked up a Dr. Pepper bottle which was on the gallery, entered the door and began cursing Nixon and at the

same time striking him on the head with the bottle. He further attacked him with his fists. The two children present and their mother, who immediately entered the room, testified in behalf of the State and described a vigorous attack on Nixon knocking him back into his chair and, as they described it, appellant jumped on him and was beating him in a rather brutal manner. Mrs. Nixon got between them and separated them. Appellant left in a car with another party. The injured party disappeared and the evidence discloses that he soon appeared in a hospital where he was examined by a doctor who testified in the case that he did not, at that time, discover any serious injury. He dressed the wound and sent him home, being of the opinion that no serious injury had been inflicted. In a few days, however, an infection set up and he again returned to the hospital where he was placed under the charge of another doctor. He found quite a serious infection had developed in the wound. An X-ray examination revealed a simple fracture of the skull above the eye. This was the wound inflicted by appellant .The doctor says he called it a simple fracture because the bone did not stick out through the flesh. There was a crack, however. This doctor said further, "It is my testimony that if he had not had the infection, you would have wanted to watch him closely because of the wound and skull fracture. He would certainly have been hospitalized."

Two questions are raised in the case. One is that the wound inflicted was not of sufficiently serious nature to support a finding of guilt of aggravated assault. Reliance is had on the testimony of the first physician. If his evidence had been all the evidence in the case the position would be tenable. Further investigation of the wound, however, revealed that the injury was more serious than the first physician had supposed. There is no conflict between the two doctors' testimony. One testified to what he saw at first when there was not sufficient apparent injury, in his opinion, to call for an X-ray examination. Subsequent developments, however, caused the examination and the more serious injury was discovered. The patient stayed in the hospital for quite a while. He was treated for meningitis. The doctor testified that this could and would be a natural result of the crack in the skull which he had described. Such a crack would not necessarily result in meningitis, but it was likely nevertheless, and probably did so result in the instant case.

Independent of the discussion of the injury by the physicians, the testimony of the two children and of their mother was sufficient to carry the issue to the jury, and to support their verdict.

The evidence of subsequent suffering resulting from the injury corroborated their statement of the viciousness of the attack and the seriousness of the wound inflicted. While in the hospital he became seriously ill, so much so that his life was endangered and death was believed to be imminent.

Appellant's bill of exception complaining of the submission of this issue to the jury, under the evidence, is overruled.

Appellant testified in his own behalf. He detailed the attack from his standpoint and said he picked up the bottle because of the previous threats of Nixon to kill him; that he struck him because, "He stood up and was reaching in his pocket. * * * When I was outside I saw him in the house and when I stepped up on the step, I picked up the bottle. * * * I picked up the bottle because he had *threaten* my life. He *threaten* my life over at my sister's house in the yard." He further says, "I tell the jury that when he got up and felt for his pocket, I had an apprehension of fear. He was getting up and he was just a little way, about two steps away, and I just stepped over and hit him with the bottle; that kinda knocked him over and he went falling towards me and I hit him with my fists and my sister ran in." Again he said on cross-examination, "I picked up the bottle because the last time I saw him he had *threaten* to kill me. I did curse him, the best I remember, I said what in the hell are you doing here. I had the bottle in my hand. * * * He didn't have time to say anything, he just got up and reached for his pocket."

In submitting the issue of self defense raised by the foregoing evidence, the court said, "* * * if, from the acts of the said William J. Nixon, or from his words, coupled with his acts, there was created in the mind of the defendant a reasonable apprehension that he (the defendant) was in danger of losing his life, or of suffering serious bodily injury at the hands of the said William J. Nixon, then the defendant had the right to defend himself from such danger or apparent danger, * * *."

In the belief that he was entitled to a charge on his right to defend against apparent danger of a lesser attack, appellant asked the charge on that subject which the court gave, but in applying the facts of the case to the charge the court limited his right of self defense to the foregoing quotation from his general charge. The question then arises as to whether or not he was entitled under the facts of the case to have the application made to the language of his requested charge. A number

of authorities are cited in his behalf, among them Holcomb v. State, 265 S. W. 1039, opinion by Judge Morrow. The judge had charged similar to the foregoing quotation of the charge in this case and had applied the law to the facts of the case accordingly. Exception was taken to it and the question presented, as in the instant case, as to whether or not the charge should have given him the right to defend against an attack less serious in its nature. The case was reversed upon a holding that the right of self defense existed in that case, "* * * although the assault was not such as to put him in fear of losing his life or suffering serious bodily injury." As a basis for this holding it is observed that the evidence showed the injured party had expressed the intention to whip the appellant, and that the jury had a right to find under the evidence that the attack the injured party was making was in accord with his expressed intention. It is further observed that if he had such intention, in accordance with previous threats, the appellant would still have the right to defend against such an attack and to "use all necessary force to repel it."

The facts of the case now before us are different. The evidence contains no previous threat to do anything less than to take his life. Appellant based his right of self defense on a motion made by Nixon towards his pocket and his fear that he would secure a knife, or something, to carry out his threat. That threat was to kill appellant. It is our conclusion that the facts do not call for the requested charge, which the court gave, and consequently it was not incumbent upon the court to apply the law to such facts. No such facts were in the case. There would be no basis for his making such application.

Finding no reversible error in the trial of the case, the judgment is affirmed.

#### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant contends in his motion that the trial court erred in failing and refusing to charge on a milder attack as set forth in Article 1224, P. C. It is noted therefrom that it is necessary that the injured person shall be in the act of making an unlawful and violent attack at the time the right shown in Art. 1224, supra, arises. There is no such violent attack shown herein. An expected or apparent attack alone was shown by the testimony; that is, appellant's testimony shows that the injured party had arisen and was placing his hand in his pocket, but

made no further demonstration at the time he was struck and injured. We think that a charge on a lesser or milder attack was not called for.

The motion for rehearing will be overruled.